UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20CR325 CDP/NCC |
| | ) | |
| JOSHUA DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On May 17, 2021, Defendant Joshua Davis filed a Motion to Suppress Evidence and Statements [ECF No. 36]. On July 6, 2021, the government filed its Response [ECF No. 44]. On August 18, 2021, the undersigned held an evidentiary hearing, and the transcript of the hearing was filed on August 20, 2021 [ECF No. 52]. Pending are matters related to Counts 2, 3 and 4 of the indictment after the government's motion to dismiss Count 1 was granted. [ECF No. 51]. A Motion to Quash filed by the City of St. Louis Police Department [ECF No. 49] is addressed by separate Memorandum and Order.

Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing in this matter; and after having had an opportunity to evaluate the credibility of the witness and observe his behavior, the undersigned makes the following findings of fact and conclusions of law.

**FACTS**

On January 29, 2020, Saint Louis Metropolitan Police Department Officer Matthew Shoults was driving a marked police Tahoe with fellow Police Officers McCool and Hamilton as passengers. The unit was assigned to a "Street Team" in the City's District 3.  The Street Team targeted and investigated drugs, guns and the theft of vehicles under the direction of their unit captain.[1]

The Street Team officers patrolled in one of two available Chevy Tahoe SUVs.  Officer Shoults recalled that he and his fellow unit officers did not have the best vehicles from which to choose.  The vehicles had high milage and sometimes lacked air conditioning.  He did not recall which specific vehicle he drove or whether the police Tahoe contained a dash-camera system on January 29th or that any dash camera installed was broken.  The vehicles sometimes needed a jump start to operate before a shift and they had faulty camera systems or no dash cameras at all. Every unit officer riding together was jointly responsible for the patrol vehicle and they took their pick of what was available at the start of a shift.  There was no written method for signing out a vehicle.  Their sergeant was aware of which patrol Tahoe was in use by a process of elimination.  The unit officers planned to use the same car for every shift if available, so long as the engine started, and the computer system worked because they were familiar with the interior. Once everything checked out, they logged in and went out on patrol.

Sometime during patrol, a police dispatcher announced, "Attention all cars," over the Street Team's police radio about a stolen vehicle message generated by the police department's Real Time Crime Center.  The alert identified a license plate number affixed to a gray Dodge

---

[1] At the time of the hearing in this case, Officer Shoults was a three-year veteran of the SLMPD police department who worked night patrol before joining the Street Team.  He is currently assigned to the Mobile Reserve Unit.

Durango reported stolen from the University City area and seen driving in Saint Louis City (the "City"). The subsequent dispatch announcement was broadcast citywide to all police districts. An unidentified police officer reported over the radio that he saw the stolen vehicle signaling in order to enter Interstate 44 near Jefferson headed southbound toward Interstate 55. Recordings of the initial police detective's report with the District 4 dispatcher, and Officer McCool's communications with the District 3 dispatcher were admitted as evidence. (Gov't Exhs. 1 and 2). The recordings reflect that the District 3 radio dispatcher had ongoing communications with responding officers for the few minutes of the pursuit prior to the traffic stop.

Officer Shoults was aware that Interstate 55 southbound crosses the boundaries of District 4 into District 3, so he tried to position his vehicle to intercept the car by driving down Arsenal toward I-55. He was also aware that the detective who first identified the suspected stolen vehicle indicated that he was not going to pursue because he was driving a covert police vehicle. The detective provided the vehicle's location for information purposes to dispatch and other responding officers.

Officer Shoults turned northbound onto Broadway and continued to follow the suspected stolen vehicle. Officer McCool reported the pursuit to the dispatcher and that information was relayed to all police vehicles in District 3. Officer Shoults believed that Officer McCool was likely the front seat passenger because it is typical for the officer riding as the front-seat passenger to be the one who communicates with dispatch during a pursuit. The front seat passenger usually confirms computer information, like running the vehicle license plates of a suspected stolen car. The dispatcher continued communications with officers and asked them whether they had attempted to curb the vehicle. Officer Shoults did not immediately conduct a traffic stop, nor did he activate sirens or police lights until other officers were in the area as back

up "in case something happened." [ECF No. 57 at 16, 26]. Officer McCool announced that they were behind the suspected stolen vehicle at Gasconade and Broadway at 1:40 p.m., and the eventual traffic stop occurred somewhere around Broadway and Alberta streets.

Officer Shoults was aware that the detective driving the covert vehicle stopped in front of the car Defendant drove. Officer Shoults is certain that the covert police vehicle did not have dash-camera equipment. Officer Shoults exited his police vehicle and approached with Officer Hamilton. Defendant was observed in the driver's seat of the vehicle and he was the sole occupant. Officer Shoults noticed that the driver's seat was reclined in a lounge-type position and Defendant's right arm was behind the front passenger seat. Officer Shoults observed that people do not tend to make movements or lean back during a normal traffic stop. He concluded that Defendant's furtive movement indicated that Defendant was trying to hide something. Officer Shoults identified Defendant and arrested him on outstanding warrants.

Officer Shoults followed police procedure regarding the return of a stolen vehicle. SLMPD officers attempt to contact the owner of a stolen vehicle to return it, so long as it is not damaged. The vehicle can be retrieved by the owner at the scene or picked up at the city tow lot. Because the vehicle was identified as a rental car, officers had it towed and searched. Officer Shoults found a firearm laying underneath the front passenger seat. He also found suspected narcotics in the center console and a digital scale.

When asked about his background and training, Officer Shoults testified that he attended the SLMPD police academy before joining the department where he was trained about proper police procedures; including that he was aware of a special order issued late in 2016 regarding the use of a digital in-car video system for police vehicles. As of January 2021, the SLMPD has a newer dash-camera system that is easier to work and new policies in place for its use. Officer

4

Shoults could not recall a specific policy or training on the digital in-car video system, and he acknowledged that he would have reviewed the policy on a computer along with many other written policies and procedures during training.  SLMPD did not have body cameras for officers at the time of Defendant's arrest on January 29, 2020.

## DISCUSSION

**Motion To Suppress Evidence and Statements [ECF No. 36]**

### I.      The Traffic Stop Was A Valid Seizure

"A traffic stop is considered a seizure for Fourth Amendment purposes."  *United States v. Guevara*, 731 F.3d 824, 827 (8th Cir. 2013); *United States v. Riley*, 684 F.3d 758, 762 (8th Cir. 2012).  "A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)) (internal quotation marks omitted).  "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence."  *Williams v. Decker*, 767 F.3d 734, 739 (8th Cir. 2014) (internal citation omitted); *United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006).  A court must evaluate whether the stop was justified based on the totality of the circumstances.  *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Officer Shoults testified that he followed Defendant based on the report of a stolen vehicle announced by the police dispatcher.  This dispatch information was confirmed by Officer McCool as they followed Defendant.  *United States v. Brooks*, 982 F.3d 1177, 1180 (8th Cir. 2020) (holding that officers had reasonable suspicion to conduct a traffic stop after their license

plate reader alerted them to a reportedly stolen vehicle driving on the highway).  The audio recordings are consistent with Officer Shoults' testimony of these events, and the vehicle itself was evidence of a possible crime.  *United States v. Mosley*, 878 F.3d 246, 253 (8th Cir. 2017) (holding that an officer had reasonable suspicion to conduct a traffic stop on a vehicle that matched the description of a bank robbery vehicle despite conflicting descriptions about who was inside the vehicle).

Defendant's argument that officers were not truthful about the reason for the traffic stop is unavailing and not supported by the record.  The traffic stop took place soon after the broadcast over the police radio.  The Dodge Durango that officers stopped matched the description and the same license plate that was earlier identified.  Officers had articulable and reasonable suspicion to stop Defendant because Officer McCool and another nearby police detective confirmed that the license plate on the subject vehicle was associated with a report of a stolen vehicle.  This assessment was particularized and objectively reasonable.  The Street Team officers could conduct a traffic stop to investigate the matter.  This point should be denied.

**II.     The Search Of The Vehicle And Seizure Of Items Was Lawful**

After the vehicle was stopped, Defendant's posture in the car and furtive movements upon their approach justified further investigation on the side of the road,[2] which led to Defendant's arrest on outstanding warrants.  The subsequent search of the vehicle was lawful on several grounds.

Defendant has not established that he has a reasonable expectation of privacy in challenging the search of an alleged stolen vehicle.  A third party "has the burden of showing

---

[2] The government also responds that it provided defendant with copies of REJIS inquires that support the officers' position that they did run the license plate to confirm the report that the vehicle was stolen prior to the traffic stop.  [ECF No. 44 at 6-7].

6

both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999). "[A]n unauthorized driver of a rental car can establish the required expectation of privacy with "'evidence of consent or permission from the lawful owner/renter.'" *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (quoting *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995). In *Bettis*, 946 F.3d at 1028-29, the Eighth Circuit Court of Appeals considered Supreme Court jurisprudence and recent cases from other Courts of Appeal in recognizing that a defendant's "wrongful presence" in a vehicle that involved criminal conduct like car theft "interferes with another's valid property interest," and which would not confer standing under the Fourth Amendment. *Id.* Defendant has not established, as he must by a preponderance of the evidence, that he had a reasonable expectation of privacy in the vehicle for him to raise this challenge.

Additionally, his claim lacks merit. "Although a warrantless search is usually *per se* unreasonable, probable cause 'justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" *Bettis*, 946 F.3d 1024, 1029 (quoting *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The Court in *Bettis* further explained,

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (citation omitted); *see Chambers v. Maroney*, 399 U.S. 42, 49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (same standard for automobile seizures). Armed with probable cause, law enforcement "may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

*Bettis*, 946 F.3d 1024 at 1029–30.

Davis was no longer in control of the vehicle after his arrest on unspecified outstanding warrants and the vehicle was towed consistent with SLMPD policy for stolen rental vehicles. *United States v. McCarty*, 612 F.3d 1020, 1026 (8th Cir. 2010), permitting officer to make a warrantless search of the car under the "automobile exception" to the warrant requirement, *see Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (per curiam). And the eventual search of the vehicle was also valid under the plain view doctrine, which allows for items like the firearm and digital scale to be seized from a vehicle upon a showing by the government that "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Lewis*, 846 F.3d 937, 943 (8th Cir. 2017); *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015). Those constitutional conditions are satisfied in this case. For these reasons, Defendant's motion to suppress evidence and statements[3] should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Joshua Davis' Motion to Suppress Evidence and Statements [ECF No. 36] be **DENIED**.

**IT IS HEREBY ORDERED** that at the direction of United States District Judge Catherine D. Perry this matter will be set for trial upon further order of the Court.

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in the waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

---

[3] There are no statements under consideration before the undersigned.

                    /s/Noelle C. Collins
                    United States Magistrate Judge

Dated this 23rd day of December, 2021.